In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.

No. 70–347.

United States District Court, E. D. Pennsylvania.

July 16, 1976.

---

Carl Helmetag, Jr., Philadelphia, Pa., for the trustees, Penn Central Transp. Co.

Rogers & Wells by William R. Glendon, New York City, and Clark, Ladner, Fortenbaugh & Young by W. Charles Hogg, Jr., and Edward C. Toole, Jr., Philadelphia, Pa., for Committee of Interline Railroads.

Pepper, Hamilton & Scheetz by Laurence Z. Shiekman, Philadelphia, Pa., for Consolidated Rail Corp.

Gratz, Tate, Spiegel, Ervin & Ruthrauff by Wilbur Bourne Ruthrauff, Philadelphia, Pa., for Richard Joyce Smith, Trustee, New York, New Haven & Hartford R. Co.

Krusen, Evans & Byrne by William P. Quinn, Philadelphia, Pa., for Trailer Train Co., American Rail Boxcar Co. and Fruit Growers Express.

Henri F. Rush, Washington, D. C., for the I. C. C.

## MEMORANDUM AND ORDER NO. 2457

FULLAM, District Judge.

The Committee of Interline Railroads, and various other parties, have petitioned for reconsideration of this Court's Order No. 2409, which was entered on June 22, 1976, upon the application of Consolidated Rail Corporation ("ConRail") for further instructions concerning disbursements to be made from the segregated account established under the Agency Agreement covered by this Court's Order No. 2297.

When the Debtor's rail properties were conveyed to ConRail as of April 1, 1976, virtually all rail-related current assets of the Debtor's estate became the property of ConRail, along with the fixed rail assets. The Debtor's estate remains liable, however, for the expenses of pre-conveyance rail operations greatly in excess of the revenues produced by pre-conveyance operations and received or to be received after conveyance.

Pursuant to § 211(h) of the Rail Act, the Agency Agreement referred to above was entered into for the purpose of having ConRail collect the post-conveyance receivables and pay therefrom the pre-conveyance payables. To the extent that the receivables

and other specified assets were not sufficient to meet these obligations, § 211(h) contemplates that ConRail would borrow money from United States Railway Association (up to a maximum of $230 million) in order to make whatever payments might be necessary to prevent threatened interference with ConRail's ability to continue rail operations uninterrupted.[1]

For various reasons, well known to the parties, which need not be detailed here, ConRail has thus far been unable to obtain any borrowings from USRA. Moreover, it is very clear that the total amount of funding authorized by § 211(h) would be insufficient, even if available, to cover the shortfall between receivables and payables. The Court is advised that proposals for increasing the amount of authorized funding under § 211(h) are under active consideration by Congress, but that final Congressional action cannot be anticipated for several weeks.

Allegedly because of the uncertainties and difficulties outlined above, ConRail has made relatively few disbursements from the segregated account, except for pre-conveyance payroll and related items. In consequence, thousands of individuals and firms who supplied labor, material or services for the operation of the railroad, in reliance upon the concept that these operations were being conducted by trustees under the supervision of a federal court, have not been paid for claims arising shortly before conveyance. Many of these claimants are major corporations as to which delay in payment, while serious, is not likely to prove fatal. It is clear, of course, that these claims will have to be paid; that they have an extremely high priority; and that they should not be required to await the formulation and consummation of a plan of reorganization. As to many of these claimants, therefore, a brief delay while the situation is clarified seems tolerable, although undesirable.

But with respect to a considerable number of these claimants, it seems clear that delay in payment would impose unreasonable and undue hardship. The extent, and precise contours, of this problem are difficult to gauge, but the problem is undoubtedly real.

■ The fact that the total resources which may be available to ConRail from the segregated account and § 211(h) loans will not be sufficient to pay all of these pre-conveyance obligations does not justify the accumulation of large sums in the segregated account, without any disbursements at all to these claimants. Accordingly, Order No. 2409 was entered as a stopgap measure, with the idea that the limited funds available should be used to pay at least some of the claims of persons least likely to be able to endure further delay. The Order permits ConRail, after payment of certain "trust fund" obligations and certain Canadian claims presumably not deferrable by this Court, to pay certain percentages of personal injury claims, and all other claims up to a $20,000 maximum. Concededly, the approximately $44 million now in the segregated account will not be enough to defray all such claims which may be presented in the future, but at least a decent start can be made.

■ The present petitions for reconsideration assert that various interline claims are entitled to very high priority because their payment is mandated under certain regulations of the Interstate Commerce Commission, citing *In re Chicago, Rock Island & Pacific R.R. Co.*, 537 F.2d 906 (7th Cir. 1976). Whatever may be the precedential effect of the cited case in light of the Third Circuit's ruling in *In re Penn Central Transp. Co.*, 486 F.2d 519 (3d Cir. 1973), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974), the fact remains that Order No. 2409 does not purport to determine issues of liability or priority; it governs only the matter of immediate disbursements from the segregated account. Since unpaid interline accounts presumably have a potential for embarrassing continued rail operations by ConRail, it is reasonable to suppose that they will be paid from § 211(h)

1. Repayment of amounts thus borrowed would be the responsibility of the Debtor's estate.

borrowings. But it is clear, as has frequently been stated previously, that the decision as to what claims are potentially disruptive and therefore trigger availability of § 211(h) funding is entirely within the control of USRA and ConRail.

■ In short, I adhere to the view that the Agency Agreement and financing arrangements contemplated by § 211(h) of the Rail Act are intended to provide at least partial solutions to transitional cash flow problems; they are not addressed to all of the ongoing problems of ConRail's continued rail operations, nor do they mandate an immediate final decision of all aspects of reorganization of the Debtor's estate.

■ The foregoing discussion has been set forth on the assumption that it is proper for this Court to dispose of a petition for reconsideration of Order No. 2409 notwithstanding the pendency of an appeal from that Order previously lodged by Consolidated Edison Corporation, which appeal presumably relates to other aspects of the Order than its treatment of interline claims. At the time of the hearing on July 14, 1976, an application for a stay of Order No. 2409 in connection with Consolidated Edison's appeal was pending before the Third Circuit. I am now advised informally that that stay has been granted, but the extent and terms of the stay are not yet known to this Court.

Since I have concluded that the petition for reconsideration must be denied, I am satisfied that it is appropriate for this Court to dispose of the petition, either because denial of a petition for reconsideration is not precluded by the pendency of an appeal, or because this Court is without power to act.